IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| THEODORE PIOTROWSKI, JR., | * | Chapter 13 |
| and WANDA PIOTROWSKI, | * | |
|     Debtors | * | |
| | * | Case No.: 1-05-bk-01013MDF |
| THEODORE PIOTROWSKI, JR., | * | |
| and WANDA PIOTROWSKI, | * | |
|     Plaintiffs | * | |
| | * | |
|     v. | * | Adv. No. 1-06-ap-00010 |
| | * | |
| NETBANK f/k/a RBMG, INC., | * | |
|     Defendant | * | |

## OPINION

### Procedural and Factual History

In the instant adversary case, Theodore and Wanda Piotrowski ("Debtors") seek to invalidate a state court judgment in foreclosure entered against them by RBMG, Inc. ("Netbank") several months before Debtors filed the instant bankruptcy case. Before the Court is Netbank's motion to dismiss the adversary case pursuant to Fed. R. Civ. P. 12(b)(1). The motion raises issues of collateral estoppel, res judicata and lack of jurisdiction under the *Rooker-Feldman* doctrine. For the reasons set forth below, Netbank's motion will be granted.

On November 5, 1999, Debtors signed a mortgage (the "Mortgage") in the amount of $199,400.00 secured by their residence. The Mortgage was "given to Mortgage Electronic Registration Systems, Inc. ('MERS'), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns)." Market Street Mortgage Corporation ("MSMC") was listed as the lender. The Mortgage was accompanied by a Note (the "Note") under which Debtors promised to repay $199,400.00 plus interest at an annual rate of 8% to MSMC or to any

1

transferee of the Note. In October 2003, Netbank[1] declared a default on the Note and initiated a foreclosure action on the Mortgage in state court. Debtors filed a timely answer to the complaint. In June 2004, Netbank moved for summary judgment. When Debtors failed to file a timely response to the summary judgment motion, Netbank obtained a judgment in foreclosure. Shortly thereafter, Netbank scheduled a sheriff's sale of the property to be held on February 28, 2005. When Debtors filed their bankruptcy petition on February 25, 2005, the sale was stayed.

In the schedules filed in support of their bankruptcy petition Debtors listed a claim secured by Debtors' principal residence in the amount of $74,398.68 held by RBMG, Inc. ("RBMG").[2] On May 11, 2005, Netbank filed a proof of claim in the amount of $87,243.08 to which Debtors filed an objection on October 14, 2005.[3] The deadline for filing a response to the objection was November 13, 2005, but Netbank did not file a response until December 1, 2005. The notice that accompanied Debtors' objection stated that the Court may enter an order disallowing the proof of claim if no response is filed.

---

[1] Netbank attached as an exhibit to its Motion to Dismiss copies of assignments of the Mortgage from MERS as the nominee of Market Street Mortgage Corporation to PB REIT, Inc. recorded at Book 1392, Page 5977, Office of the Recorder of Deeds, York County, Pennsylvania and from PB REIT, Inc. to RBMG, Inc. recorded at Book 1679, Page 6704, Office of the Recorder of Deeds, York County, Pennsylvania. Netbank's brief states that Netbank was previously known as RBMG and Debtors listed RBMG as a secured creditor in their schedules.

[2] Although Debtors' Complaint challenges the validity of Netbank's proof of claim, Debtors' schedule of secured debts did not indicate that the claim was contingent, unliquidated or disputed. In contrast, each of the forty-nine unsecured claims was marked as disputed.

[3] No proof of claim by any other entity claiming to be a successor in interest to RBMG was filed.

On July 20, 2005, Debtors filed an action, *pro se*, in the United States District Court for the Middle District of Pennsylvania (1:CV-05-1455) alleging the violation of various federal and state consumer protection laws regarding collection of debts.[4] Debtors' complaint in District Court was filed against the originator and subsequent holders of the Note, as well as Netbank, and their respective attorneys. On November 22, 2005, the case was dismissed by the District Court, which found it lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine.

Debtors filed the instant complaint through counsel on January 17, 2006. In the complaint, Debtors requested the Court "to vacate Netbank's Judgment in Foreclosure. . . , enter a declaratory judgment . . . declaring Netbank's [foreclosure] judgment . . . void, [and] disallow Netbank's Proof of Claim . . . ." Debtors also demanded an award of damages "in excess of twenty thousand dollars." Netbank filed the instant motion to dismiss in response. Both parties have filed briefs in support of their positions, and the matter is ready for a decision.[5]

---

[4]Specifically, Debtors cited the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq., the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. §2270 et seq., and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201 et seq.

[5]This Court has jurisdiction over adversary cases filed under the Bankruptcy Code pursuant to 28 U.S.C. §§157 and 1334. An objection to a proof of claim is a core matter pursuant to 28 U.S.C. §157(b)(2)(B). This Opinion constitutes the findings of fact and conclusions of law required under Fed. R. Bankr. P. 7052.

**Discussion**

The *Rooker-Feldman*[6] doctrine dictates the outcome of this case. *See also Knapper v. Bankers Trust Co. (In re Knapper)*, 407 F.3d 573 (3d Cir. 2005). *Rooker-Feldman* was cogently and concisely explained by the District Court in its decision to dismiss Debtors' *pro se* complaint referenced above.

> The *Rooker-Feldman* doctrine provides that lower federal courts may not sit in direct review of the decisions of a state tribunal. . . . [A] claim is barred by the *Rooker-Feldman* doctrine if: (1) the federal claim was actually litigated in state court prior to the filing of the federal action or (2) if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong. In assessing whether a claim was "actually litigated" in state court, the court must look to the substance of the claims adjudicated in the state court compared to the plaintiff's claims in the federal action . . . . Alternatively, a federal claim is inextricably intertwined with a state adjudication when (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take action that would negate the state court's judgment. . . . Thus, a plaintiff is foreclosed from seeking relief in federal court that would prevent a state court from enforcing its orders.

*Piotrowski v. Federman and Phelan, LLP et al*, 2005 WL 3118031, *3 (M.D. Pa. 2005) (citing *Knapper,* 407 F.3d at 580). (Other citations, internal quotations and footnote omitted.)

In the instant case, Debtors expressly seek an order "vacating the York County Court of Common Pleas Judgment in Foreclosure based on Federal Rule of Civil Procedure § 60(b)(1) for mistake, § 60(b)(2) on newly discovered evidence; or § 60(b)(3) due to '. . . fraud, misrepresentation, or other misconduct of an adverse party;' and/or a ruling by this Court that the foreclosure judgment is otherwise void pursuant to Federal Rule § 60(b)(4)." (Complaint,

---

[6]The doctrine takes its name from two Supreme Court cases – *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

4

introductory paragraph.) This court may not vacate the state court judgment, however, because "lower federal courts do not have jurisdiction to review a case litigated and decided in state court; only the United States Supreme Court has jurisdiction to correct state court judgments." *Gottfried v. Med. Planning Servs., Inc.,* 142 F.3d 326, 330 (6th Cir. 1998). Moreover, Fed.R.Civ.P. 60 applies to judgments rendered by the federal court before which the motion is made. Rule 60 is not a procedural device for modifying decisions rendered by state courts. *See* Fed.R.Civ.P. 81(a) (defining to which proceedings the Federal Rules of Civil Procedure are applicable). *See also Schoenberger v. Oselka*, 909 F.2d 1086 (7th Cir. 1990) (refusing to impose sanctions under Fed.R.Civ.P. 11 based on allegedly frivolous state court complaint removed to federal court because "[t]he federal rules do not govern practice in state courts.")

In the adversary case, Debtors also invoke 11 U.S.C. §§ 502(b)(1) and 506 to "declare [Netbank's] claim unenforceable against the debtors" and to determine the secured status of Netbank's claim. Section 502 (allowance of claims) and section 506 (determination of secured status) may not be used to void the state court foreclosure judgment. "[The] analysis is not altered by the fact that [Debtors'] federal claim is cloaked in the guise of an adversary proceeding in bankruptcy court because *Rooker-Feldman* still applies." *Knapper*, 407 F.3d at 581.

"[Section] 502(b)(1) objections don't occur in a legal vacuum; they are subject to and limited by other legal considerations such as the subject-matter jurisdiction restrictions imposed by the *Rooker-Feldman* doctrine." *In re Liptak*, 304 B.R. 820, *837 -838 (Bankr. N.D. Ill. 2004) *citing In re Fiterman,* 1999 WL 1044811, at *3 (D. Minn.) (refusing to review argument that claim was unenforceable by a corporation no longer existing because state court review had already

5

rejected argument); *In re Johnson,* 210 B.R. 1004, 1006 (Bankr.W.D.Tenn.1997); March, Kathleen P. & Hildebrandt, Jennifer, *The Many Ways to Win or Lose on Your Bankruptcy Issue in State Court; or, Why Bankruptcy Lawyers and Judges Who Thought State Court Was Irrelevant to Bankruptcy Practice Guessed Wrong,* 25 Cal. Bankr.J. 332, 343 (2000).

Finally, in addition to seeking an order invalidating the state court's order, Debtors also request that Netbank's proof of claim be disallowed. Debtors assert two bases for that request: (1) that Netbank's foreclosure judgment is void; and (2) that Netbank did not file a timely response under Rule 3007-1(b)(2)(B) of the Local Bankruptcy Rules to Debtors' objection to its proof of claim. As indicated above, the *Rooker-Feldman* doctrine precludes this Court from disallowing Netbank's proof of claim through a declaration that the judgment on which the proof of claim is based is void. As to Netbank's tardy response to the objection to its proof of claim, the Court has discretion to strictly enforce or to waive the enforcement of its local rules. A federal court "possesses great leeway in the application and enforcement of its local rules." *United States v. Roberts* 978 F.2d 17, 20 (1st Cir. 1992) (citing *United States v. Diaz-Villafane,* 874 F.2d 43, 46 (1st Cir.), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989) (other citations omitted). For this Court to disallow Netbank's proof of claim for failure to file a timely answer would be equivalent to granting a default judgment on Debtors' objection. "Default judgments are disfavored and any doubt as to whether a default judgment should be vacated must be resolved in favor of setting aside the default and reaching a decision on the merits." *In re Subramanian*, 2006 WL 1645018, *4 (D.N.J.) (citing *Zawadski de Bueno v. Bueno Castro,* 822 F.2d 416, 420 (3d Cir.1987)). Debtors do not assert that Netbank's delay of sixteen

days in responding to the Objection prejudiced Debtors. Accordingly, the Court will not disallow the proof of claim based solely on the untimeliness of Netbank's response.

An appropriate order will be entered.

By the Court,

*Mary D. France*
Bankruptcy Judge

*This document is electronically signed and filed on the same date.*

Date:   November 14, 2006